IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ROY LEE EASLEY,                )
                               )
    Plaintiff,             )
                               )
VS.                            )    No. 12-2466-JDT
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social Security, )
                               )
    Defendant.             )

ORDER REVERSING COMMISSIONER'S DECISION AND
REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

This action was filed by the Plaintiff, Roy Lee Easley, to obtain judicial review of the defendant Commissioner's final decision denying his applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Plaintiff's applications for benefits were denied initially and upon reconsideration by the Social Security Administration. At the Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 16, 2010. (R. 24-33.) On January 25, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 10-19.) The Appeals Council denied Plaintiff's request for review on April 16, 2012. (R. 1-5). Thus, the ALJ's decision became the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. The reviewing court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* Judicial review is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604–08 (6th Cir. 2009); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).

Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Perales*, 402 U.S. at 401; *Lindsley*, 560 F.3d at 604-05; *Kyle*, 609 F.3d at 854. The Commissioner, not the reviewing court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on April 28, 1967, and received a special eduction high school diploma. (R. 18, 27, 310.) He has past relevant work experience as a production assembler.

(R. 18.) Plaintiff alleged that he became disabled on October 15, 2008, due to a lower back injury. (R. 117.)

In his decision, the ALJ found that Plaintiff met the non-disability insured status requirements and had not engaged in substantial gainful activity since his alleged disability onset date. (R. 12.) The ALJ also found that Plaintiff's borderline intellectual functioning, degenerative lumbar disc disease with radiculopathy, and depression were severe impairments but that his impairments did not, either singly or in combination, meet or medically equal a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. (R. 12-16.) The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, but his statements regarding the intensity, persistence, and limiting effects of his symptoms were not fully credible. (R. 16-17.) The ALJ further found that Plaintiff had the residual functional capacity to perform light work except that he was limited to only occasional climbing of ladders, ropes, and scaffolds; could understand, remember, concentrate, and attend to the completion of low-level detailed tasks; and had some, but not substantial, difficulties in relating to the general public, interacting with co-workers and supervisors, and adapting to changes in work-like settings. (R. 16-18.) Given Plaintiff's residual functional capacity, the ALJ determined he could not perform his past relevant work. (R. 18.) However, considering Plaintiff's age, education, work experience and residual functional capacity, and using the Medical-Vocational Guidelines ("grids") as a framework for decision-making, there are jobs that exist in significant numbers

in the national economy that he can perform. (R. 18-19). Accordingly, Plaintiff was not under a disability at any time through the date of the decision. (R. 19.)

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The initial burden of going forward is on the claimant to show that he is disabled from engaging in her former employment; the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*; *see Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.
4. An individual who can perform work that he has done in the past will not be found to be disabled.
5. If an individual cannot perform his past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation

process. *Id.*; *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). Here, the analysis proceeded to step five, where the ALJ determined there are jobs existing in significant numbers in the national economy that the Plaintiff can perform based on age, education, past work experience, and residual functional capacity.

Plaintiff contends that substantial evidence does not support the ALJ's determination that he does not meet Listing 12.05C, which provides:

> 12.05 Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

At the administrative hearing, Plaintiff testified that he was in special education classes "all through school." (R. 27.) This is borne out by his school records. In a report documenting pyschological testing[1] that was administered to Plaintiff in 1982, when he was in the ninth grade, the school pyschologist noted that Plaintiff had been enrolled in special education during elementary school. The ninth grade testing showed that Plaintiff had a Full

---

[1] The tests administered at that time were the Wechsler Intelligence Scale for Children-Revised and the Wide Range Achievement Test-1978 Norms. (R. 198.)

Scale IQ score of 68; therefore, he was certified as "Educable Mentally Retarded." His reading grade rating was 4.1, and his math grade rating was 3.3. (R. 198-205.)

In connection with his applications for disability benefits, Plaintiff was evaluated on July 1, 2009, by Dr. William R. Sewell, Ph.D., a consultative psychologist. (R. 310-317.) During the evaluation, with regard to his activities of daily living, Plaintiff reported that he could microwave food for himself, but would sometimes go all day without eating. He did not help his mother with chores. He visited with relatives during the day, watched television, and went to bed around 10:00 p.m. (R. 311.) Plaintiff's memory was intact, his abstract reasoning was poor, his judgment reasonable, and his fund of information and vocabulary was as expected for someone in the low average range of intelligence. (*Id.*)

Dr. Sewell administered the Wechsler Adult Intelligence Scale-IV (WAIS-IV) and the Wide Range Achievement Test-revision IV. The intelligence testing resulted in a Full Scale IQ score of 61. Dr. Sewell summarized the IQ testing as follows:

> [Plaintiff's] general cognitive ability, as estimated by the WAIS-IV, is in the extremely low range (FSIQ = 61). Roy's verbal comprehension and perceptual reasoning abilities were both in the extremely low range (VCI = 68, PRI = 65). Roy's ability to sustain attention, concentrate, and exert mental control is in the extremely low range (WMI = 69.) Roy's ability in processing simple or routine visual material without making errors is in the extremely low range when compared to his peered (PSI = 65).

(R. 314.) Plaintiff's achievement test scores were comparable, with both reading composite and math computation scores at the 1% percentile. (R. 314-315.) Dr. Sewell concluded that Plaintiff was "functioning in the mild mental retardation range of intelligent [sic] cognitively." (R. 315.) In assessing Plaintiff's ability to do work-related activities, Dr.

Sewell stated that he could "complete several step non-skilled duties," follow instructions and rules, respond properly to supervisors and co-workers, exercise reasonable judgment, and behave in an emotionally stable way. (*Id.*)

The ALJ's discussion of whether Plaintiff met or equaled Listing 12.05 is internally inconsistent. The ALJ first stated Plaintiff had the ability to drive, care for his own personal needs, cook, attend church, socialize with his brother, and go shopping. Based on those specific abilities, the ALJ found that Plaintiff had *moderate*, not mild, restrictions in three areas: activities of daily living, social functioning, and the ability to maintain concentation, persistence, and pace. However, the ALJ then stated, "despite the [Plaintiff's] low IQ scores and diagnosis of borderline intellectual functioning his adaptive functioning abilities remain intact as evidenced by the above noted abilities and his extensive work history." (R. 14.)[2] That finding inexplicably dismisses the moderate functional restrictions just identified.

The ALJ also rejected the results of Plaintiff's IQ testing and Dr. Sewell's conclusion that Plaintiff was mildly mentally retarded. Instead, he relied on Dr. Sewell's opinion that Plaintiff could perform the most basic work-related activities. The ALJ then once more referred to Plaintiff's daily activities: "The claimant is also noted to be capable of a variety of activities of daily living such as caring for his own personal needs, managing money, shopping, driving, and cooking; activities that exhibit a much higher level of functioning than

---

[2] Merely having a long work history does not necessarily prove that a claimant has no deficits in adaptive functioning. Many individuals with mild mental retardation are gainfully employed, and Listing 12.05C does not require a claimant to demonstrate that he is so functionally limited he was never able to hold a job.

7

testing results would indicate." (R. 15.) This statement by the ALJ again fails to account for the previous finding that Plaintiff was moderately restricted in his activities of daily living.[3]

The ALJ's determination that Plaintiff did not meet Listing 12.05C is not supported by substantial evidence. However, the evidence of disability in the record is not so overwhelming that benefits should be awarded, *see Faucher v. Sec'y of Health & Human Res.*, 17 F.3d 171, 176 (6th Cir. 1994). The Commissioner is directed to re-evaluate this case, which shall include making a clearer assessment of whether Plaintiff meets or equals Listing 12.05C.

Therefore, Commissioner's decision is REVERSED, and the case is remanded for further proceedings under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[3] The ALJ also strangely stated that Plaintiff "has required no mental health treatment for his low intellectual functioning." (R. 16.) Low intellectual functioning does not require treatment.